UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DDC LIMITED PARTNERSHIP, | ) | CIVIL ACTION NO. |
| | ) | 3:02CV01049 (PCD) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| (COMMISSIONER OF INTERNAL | ) | OCTOBER 30, 2003 |
| REVENUE SERVICE), | ) | |
| | ) | |
| Defendant. | ) | |

## TRIAL MEMORANDUM

### DEFENDANT'S SECTION B AND PLAINTIFF'S RESPONSES THERETO

**B1.    Claims of fact proposed for stipulation as undisputed.**

The United States' Trial Memorandum Section B1 in <u>Seth Co., Inc. v. United States</u> includes claims of fact proposed for stipulation as undisputed which are relevant to the issue of whether DDC Limited Partnership is a nominee, alter ego or transferee of Gary Pierce.  Those claims of fact proposed for stipulation as undisputed are incorporated herein by reference.  The following list of claims of fact proposed for stipulation as undisputed serves to supplement those claims of fact proposed for stipulation as undisputed.

The term "transfer" is used in Sections B1 and B2 to describe the form of a transaction not the legal effect of a transaction.

1.      After graduating from high school in 1962 and attending college for a year, Mary Pierce began work as a dental assistant.  She continued working as a dental assistant until 1966.  From 1967 until approximately 1972, Mary Pierce did not earn any income.  In approximately 1972, Mary Pierce started working as a dental assistant on a part-time basis.  She continued working as a dental assistant on a part-time basis until 1978.  For two or three years beginning in 1978, Mary Pierce did not earn any income.

**RESPONSE:**    Admitted.

2.    Mary Pierce maintained a checking account from 1984 through 1990.

**RESPONSE:**    Admitted.

3.    Mary Pierce did not maintain any savings accounts from 1986 through 1990.

**RESPONSE:**    Admitted.

4.    From the mid 1980's to the early 1990's Mary Pierce did have any mutual funds, stock or valuable jewelry.

**RESPONSE:**    It is admitted that Mary Pierce owned assets, but because the assets described are indefinite, it cannot be admitted as proposed.

5.    The billing records of Andros, Floyd & Miller, P.C. indicate that: (1) on March 26, 1993, a telephone conference was held regarding the innocent spouse defense with respect to Mary Pierce; (2) on March 30, 1993, an attorney conference was held regarding the innocent spouse defense with respect to Mary Pierce; and (3) on March 30, 1993, a meeting was held with Gary Pierce regarding, among other matters, the innocent spouse issue with respect to Mary Pierce.

**RESPONSE:**    Admitted.

6.    Mary Pierce filed a claim for innocent spouse relief with the Internal Revenue Service in September of 1998.

**RESPONSE:**    Admitted.

7.    After Mary Pierce's claim for innocent spouse relief was denied by the Internal Revenue Service, she filed a petition seeking innocent spouse relief with the United States Tax Court.

**RESPONSE:**    Admitted.

- 2 -

8.      Mary Pierce does not know how MCU Financial Corporation was started.

**RESPONSE:**   Denied in that Mary Pierce "does not recall" as distinguished from "does not know." To the extent that her deposition may have indicated, "do not know," it was never clarified as to whether or not it is based on a present recollection or whether or not she was aware of the facts and circumstances at the time of the occurrence, and just does not now know.  Trial testimony of the Pierces.

9.      According to MCU Financial Corporation's corporate records Judith Patnaude was the Vice President and Secretary of the corporation from October 16, 1991 to April 13, 1992.

**RESPONSE:**   Admitted.

10.     MCU Financial Corporation never had any employees.

**RESPONSE:**   Admitted.

11.     Mary Pierce does not know who had signature authority on MCU Financial Corporation's Fleet Bank account.

**RESPONSE:**   Denied in that Mary Pierce "does not recall" as distinguished from "does not know." To the extent that her deposition may have indicated, "do not know," it was never clarified as to whether or not it is based on a present recollection or whether or not she was aware of the facts and circumstances at the time of the occurrence, and just does not now know.  Trial testimony of the Pierces.

12.     Prior to the formation of Seth Co., Inc., MCU Financial Corporation and Derekseth Corporation had the same office location.

**RESPONSE:**   Admitted.

13.     After the formation of Seth Co., Inc., MCU Financial Corporation and Seth Co., Inc. had the same office location.

**RESPONSE:**   Admitted.

14.    According to MCU Financial Corporation's corporate records, Derek Pierce was elected Vice President and Secretary of the corporation on April 13, 1992, and resigned as Vice President and Secretary on May 31, 1996.

**RESPONSE:**    Admitted.

15.    According to MCU Financial Corporation's Minutes of Special Meeting of Board of Directors dated May 31, 1997, Derek Pierce was elected Vice President and Secretary of MCU Financial Corporation on May 31, 1997.

**RESPONSE:**    Admitted.

16.    Derek Pierce signed MCU Financial Corporation's 1992, 1993, 1994, 1998 Forms 1120, U.S. Corporation Income Tax Returns.

**RESPONSE:**    Admitted.

17.    Derek Pierce was never involved in the preparation of MCU Financial Corporation's tax returns and never provided any information to the accountants who prepared MCU Financial Corporation's tax returns.

**RESPONSE:**    Admitted.

18.    Each of the 1992 through 1998 Forms 1120 for MCU Financial Corporation lists "loans from [stockholder]" as set forth in the table below:

| Tax Period | Start of the Year Amount | End of the Year Amount |
|---|---|---|
| 1992 | $0 | $414,200 |
| 1993 | $414,200 | $515,200 |
| 1994 | $515,200 | $515,200 |
| 1995 | $515,200 | $525,200 |
| 1996 | $525,200 | $525,500 |
| 1997 | $525,200 | $705,200 |
| 1998 | $705,200 | $705,200 |

**RESPONSE:**   Admitted.

19.   Derek Pierce does not know what the purpose of the $414,200 loan made to MCU
      Financial Corporation in 1992 was.

**RESPONSE:**   Denied in that Derek Pierce "does not recall" as distinguished from "does not
      know." To the extent that his deposition may have indicated, "do not know," it was
      never clarified as to whether or not it is based on a present recollection or whether
      or not he was aware of the facts and circumstances at the time of the occurrence,
      and just does not now know.  Trial testimony of the Pierces.

20.   In addition to the loans from the stockholder, each of the 1992 through 1998 Forms 1120
      for MCU Financial Corporation lists a $70,000 note receivable from an unidentified
      source and a $100 note payable to an unidentified source.  The only other notes
      receivable, loans receivable, notes payable and notes receivable listed on MCU Financial
      Corporation's 1992 through 1998 tax returns are set forth in the table below:

| Tax Period | Description on Return | Source (from/to) | Year End Amount |
|---|---|---|---|
| 1993 | Notes Receivable | DDC Limited Partnership | $198,150 |
| 1994 | Notes Receivable | DDC Limited Partnership | $198,150 |
| 1995 | Notes Receivable | DDC Limited Partnership | $398,150 |
| 1996 | Notes Receivable | DDC Limited Partnership | $33,150 |
| 1997 | Notes Receivable | DDC Limited Partnership | $536,947 |
| 1997 & 1998 | Notes Receivable | DDC Limited Partnership | $536,947 |
| 1995 | Notes Receivable | Seth Co., Inc. | $47,000 |
| 1996 | Notes Receivable | Seth Co., Inc. | $217,336 |
| 1997 | Notes Receivable | Seth Co., Inc. | $127,336 |

| 1998 | Notes Receivable | Seth Co., Inc. | $235,336 |
|------|------------------|----------------|----------|
| 1994 | Loan Payable | CDW, Inc. | $100,000 |
| 1995 | Loan Payable | CDW, Inc. | $100,000 |
| 1996 | Loan Payable | CDW, Inc. | $136,000 |
| 1997 | Loan Payable | CDW, Inc. | $136,000 |
| 1998 | Loan Payable | CDW, Inc. | $136,000 |

**RESPONSE:**   Admitted.

21.     The 1992 through 1998 income tax returns for MCU Financial Corporation do not report any interest income.

**RESPONSE:**   Admitted.

22.     The 1992 through 1998 income tax returns for MCU Financial Corporation do not report any interest deductions.

**RESPONSE:**   Admitted.

23.     Mary Pierce does not know whether or not the $70,000 note receivable listed on MCU Financial Corporation's 1992 income tax return was a loan.

**RESPONSE:**   Denied in that Mary Pierce "does not recall" as distinguished from "does not know." To the extent that her deposition may have indicated, "do not know," it was never clarified as to whether or not it is based on a present recollection or whether or not she was aware of the facts and circumstances at the time of the occurrence, and just does not now know.  Trial testimony of the Pierces.

24.     Mary Pierce does not know what the $70,000 note receivable listed on MCU Financial Corporation's 1992 income tax return was for.

**RESPONSE:**   Denied in that Mary Pierce "does not recall" as distinguished from "does not know." To the extent that her deposition may have indicated, "do not know," it was never clarified as to whether or not it is based on a present recollection or whether or not she was aware of the facts and circumstances at the time of the occurrence, and just does not now know.  Trial testimony of the Pierces.

- 6 -

25.   Derek Pierce does not know what the $70,000 note receivable listed on MCU Financial Corporation's 1992 income tax return was for.

**RESPONSE:**   Denied in that Derek Pierce "does not recall" as distinguished from "does not know." To the extent that his deposition may have indicated, "do not know," it was never clarified as to whether or not it is based on a present recollection or whether or not he was aware of the facts and circumstances at the time of the occurrence, and just does not now know. Trial testimony of the Pierces.

26.   With respect to the $198,150 loan to DDC Limited Partnership reflected on MCU Financial Corporation's 1993 tax return, Derek Pierce does not know: (1) what the purpose of the loan was; (2) what the terms of the loan were; (3) whether interest was charged on the loan; (4) whether the loan was secured by a mortgage; and (5) who negotiated the loan.

**RESPONSE:**   Denied in that Derek Pierce "does not recall" as distinguished from "does not know." To the extent that his deposition may have indicated, "do not know," it was never clarified as to whether or not it is based on a present recollection or whether or not he was aware of the facts and circumstances at the time of the occurrence, and just does not now know. Trial testimony of the Pierces.

27.   With respect to the and loans receivable and loans payable reflected on MCU Financial Corporation's 1994 through 1998 tax returns, including those listed as notes receivable and notes payable, Derek Pierce does not know: (1) what the purpose of the loans were; (2) what the terms of the loans were; (3) whether interest was charged on the loans; and (4) whether the loans were secured.

**RESPONSE:**   Denied in that Derek Pierce "does not recall" as distinguished from "does not know." To the extent that his deposition may have indicated, "do not know," it was never clarified as to whether or not it is based on a present recollection or whether or not he was aware of the facts and circumstances at the time of the occurrence, and just does not now know. Trial testimony of the Pierces.

28.   The loan payable to CDW, Inc. listed on MCU Financial Corporation's 1997 and 1998 income tax returns are not reflected on CDW, Inc.'s 1997 and 1998 Forms 1120S, U.S. Income Tax Returns for and S Corporation.

**RESPONSE:**   Admitted.

29.    Mary Pierce's 1995, 1996 and 1997 income tax returns do not list any dividend income.

**RESPONSE**:    Admitted.

30.    Mary Pierce's 1995, 1996 and 1997 income tax returns do not list any interest income from MCU Financial Corporation.

**RESPONSE**:    Admitted.

31.    Employees of Seth Co., Inc. ran MCU Financial Corporation's financial operations.

**RESPONSE**:    Admitted.

32.    MCU Financial Corporation, Inc.'s bookkeeping was done by Seth Co., Inc.'s employees.

**RESPONSE**:    Admitted.

33.    MCU Financial Corporation, Inc. did not pay Seth Co., Inc. for the work done by Seth Co., Inc.'s employees for MCU Financial Corporation, Inc.

**RESPONSE**:    Admitted that there was no direct monetary payment, but Seth Co. availed itself of MCU lending dollars to Seth Co. which provided consideration for Seth Co. services to MCU.

34.    When Seth Co., Inc. needed money, the employees in Seth Co., Inc.'s bookkeeping department could prepare a check to transfer funds from MCU Financial Corporation to Seth Co., Inc.

**RESPONSE**:    Admitted to the extent that MCU provided, in effect, a line of credit to Seth Co.

35.    On occasion, MCU Financial Corporation purchased trade homes from Seth Co., Inc.'s customers.

**RESPONSE**:    Denied because "on occasion" is an ambiguous phrase and no specific date or dates were provided.

36.    Gary Pierce was involved in MCU Financial Corporation's purchase of trade homes from Seth Co., Inc.'s customers.

**RESPONSE**:    Admitted.

37.    By letter dated February 24, 2001, addressed to "MCU Fin. Corp. Inc., Gary Pierce, 5 Amanda Dr., Manchester," the State of Connecticut Department of Revenue Services informed MCU Financial Corporation that it had received information indicating that the corporation was no longer doing business and was unable to pay Connecticut state tax obligations.

**RESPONSE:**    Denied.  Plaintiff has been unable to verify the letter.  Plaintiff has sought to verify the letter with defense counsel.

38.    In November of 1992, Andros, Floyd & Miller, P.C. prepared DDC Limited Partnership's certificate of limited partnership and its partnership agreement.

**RESPONSE:**    Admitted.

39.    Andros, Floyd & Miller, P.C.'s Itemized Statement dated November 25, 1992, reflects a telephone conference on November 16, 1992, with Gary Pierce and John Wall regarding revisions to DDC Limited Partnership's certificate of limited partnership and its partnership agreement and a second telephone conference with Gary Pierce regarding draft revisions to the partnership agreement.

**RESPONSE:**    Admitted.

40.    By letter dated November 17, 1992, Andros, Floyd & Miller, P.C. sent the final copy of DDC Limited Partnership's partnership agreement to Gary Pierce.

**RESPONSE:**    Admitted.

41.    Mary Catherine Development Company paid for the work done by Andros, Floyd & Miller, P.C. in preparing DDC Limited Partnership's certificate of limited partnership and its partnership agreement.  Mary Catherine Development Company also paid for the filing fees for filing the certificate of limited partnership with the Secretary of State for the State of Connecticut.

**RESPONSE:**    Admitted.

42.    Prior to the formation of Seth Co., Inc., DDC Limited Partnership and Derekseth Corporation had the same office location.

**RESPONSE:**    Admitted.

43.     After the formation of Seth Co., Inc., DDC Limited Partnership and Seth Co., Inc. had the same office location.

**RESPONSE:**   Admitted.

44.     C. David Weeks never spoke with Gary Pierce, Derek Pierce, or Mary Pierce about DDC Limited Partnership after its formation.

**RESPONSE:**   Denied.  Trial testimony of Gary Pierce and Derek Pierce.

45.     DDC Limited Partnership has never had any employees.

**RESPONSE:**   Admitted.

46.     DDC Limited Partnership's 1993 through 2001 income tax returns list Derek Pierce as the designated tax matters partner.  Derek Pierce does not know what his role as the tax matters partner was.

**RESPONSE:**   Admitted.

47.     Derek Pierce does not know anything about the $490,000 capital contribution from the limited partner listed on DDC Limited Partnership's 1993.

**RESPONSE:**   Denied in that Derek Pierce "does not recall" as distinguished from "does not know."  To the extent that his deposition may have indicated, "do not know," it was never clarified as to whether or not it is based on a present recollection or whether or not he was aware of the facts and circumstances at the time of the occurrence, and just does not now know.  Trial testimony of the Pierces.

48.     DDC Limited Partnership's 1993 income tax return lists a $5,000 capital contribution by Derek Pierce and a $5,000 capital contribution by C. David Weeks.  These capital contributions consisted of promissory notes.  According to DDC Limited Partnership's 1993 through 2001 income tax returns, these promissory notes totaling $10,000 were never paid to DDC Limited Partnership.

**RESPONSE:**   Admitted.

49.    DDC Limited Partnership's 1994 through 2001 income tax returns do not list any capital contributions by Derek Pierce or C. David Weeks.

**RESPONSE:**    Admitted.

50.    The notes receivable from its general partners and notes payable to its limited partner listed on DDC Limited Partnership's 1993 through 2001 tax returns are set forth in the table below:

| Tax Period | Description on Return | Source (from/to) | Year End Amount |
|---|---|---|---|
| 1993 - 1997 | Notes Receivable | General Partners | $10,000 |
| 1998 - 2001 | Notes Receivable | General Partners | $20,000 |
| 1993 - 2001 | Notes Payable | Limited Partner | $310,000 |

**RESPONSE:**    Admitted.

51.    The only loans receivable, loans payable, notes receivable, and notes payable listed on DDC Limited Partnership's 1993 through 2001 tax returns in addition to the notes receivable from the general partners and the notes payable to the limited partner are set forth in the table below:

| Tax Period | Description on Return | Source (from/to) | Year End Amount |
|---|---|---|---|
| 1993 | Revolving Note Receivable | CDW, Inc. | $993,318 |
| 1994 | Revolving Note Receivable | CDW, Inc. | $993,318 |
| 1995 | Revolving Note Receivable | CDW, Inc. | $1,193,318 |
| 1996 | Revolving Note Receivable | CDW, Inc. | $828,318 |
| 1997 | Revolving Note Receivable | CDW, Inc. | $828,318 |

- 11 -

| 1998 | Revolving Note Receivable | CDW, Inc. | $828,318 |
|------|---------------------------|-----------|----------|
| 1999 | Revolving Note Receivable | CDW, Inc. | $828,318 |
| 2000 | Revolving Note Receivable | CDW, Inc. | $828,318 |
| 2001 | Revolving Note Receivable | CDW, Inc. | $828,318 |
| 1997 | Notes Receivable | Seth Co., Inc. | $319,617 |
| 1998 | Notes Receivable | Seth Co., Inc. | $321,843 |
| 1999 | Notes Receivable | Seth Co., Inc. | $484,553 |
| 2000 | Notes Receivable | Seth Co., Inc. | $749,553 |
| 2001 | Notes Receivable | Seth Co., Inc. | $749,533 |
| 1993 | Note Payable | MCU Financial Corporation | $198,150 |
| 1994 | Note Payable | MCU Financial Corporation | $198,150 |
| 1995 | Note Payable | MCU Financial Corporation | $398,150 |
| 1996 | Note Payable | MCU Financial Corporation | $33,150 |
| 1997 | Note Payable | MCU Financial Corporation | $536,948 |
| 1998 | Note Payable | MCU Financial Corporation | $536,948 |
| 1999 | Note Payable | MCU Financial Corporation | $536,948 |
| 2000 | Note Payable | MCU Financial Corporation | $536,948 |

| 2001 | Note Payable | MCU Financial Corporation | $536,948 |
|------|--------------|---------------------------|----------|

**RESPONSE:**   Admitted.

52.    The revolving note receivable from CDW, Inc. listed on DDC Limited Partnership's 1997 through 2001 income tax returns are not reflected on CDW, Inc.'s 1997 through 2001 income tax returns.

**RESPONSE:**   Admitted.

53.    With respect to the loan to Seth Co., Inc. reflected on DDC Limited Partnership's 1999 income tax return, Derek Pierce does not know: (1) what the purpose of the loan was; (2) what the terms of the loan were; (3) whether interest was charged; and (4) whether there was a written agreement with respect to the loan.

**RESPONSE:**   Denied in that Derek Pierce "does not recall" as distinguished from "does not know." To the extent that his deposition may have indicated, "do not know," it was never clarified as to whether or not it is based on a present recollection or whether or not he was aware of the facts and circumstances at the time of the occurrence, and just does not now know.  Trial testimony of the Pierces.

54.    With respect to the loan to Seth Co., Inc. reflected on DDC Limited Partnership's 2000 income tax return, Derek Pierce does not know: (1) why the loan was made; (2) what the terms of the loan were; (3) whether interest was charged; and (4) whether there was a written agreement with respect to the loan.

**RESPONSE:**   Denied in that Derek Pierce "does not recall" as distinguished from "does not know." To the extent that his deposition may have indicated, "do not know," it was never clarified as to whether or not it is based on a present recollection or whether or not he was aware of the facts and circumstances at the time of the occurrence, and just does not now know.  Trial testimony of the Pierces.

55.    Mary Pierce's 1995, 1996 and 1997 income tax returns do not list any interest income from DDC Limited Partnership.

**RESPONSE:**   Admitted.

56.    DDC Limited Partnership used Seth Co., Inc.'s office supplies.

**RESPONSE:**    Admitted.

57.    DDC Limited Partnership's bookkeeping was done by Seth Co., Inc.'s employees.

**RESPONSE:**    Admitted.

58.    DDC Limited Partnership did not pay Seth Co., Inc. for the bookkeeping services
       performed by Seth Co., Inc.'s employees for DDC Limited Partnership.

**RESPONSE:**    Admitted that there was no direct compensation.  However, the consideration
                 was the extension of loans by DDC Limited Partnership to Seth Co.

59.    When Seth Co., Inc. needed money, the employees in Seth Co., Inc.'s bookkeeping
       department could a check to transfer funds from DDC Limited Partnership to Seth Co.,
       Inc.

**RESPONSE:**    Denied except to the extent properly authorized and then the check would have
                 to be signed by an appropriate signatory on the account.  Trial testimony of the
                 Pierces.

60.    By June of 2000 Gary Pierce had taken over the bookkeeping duties for Seth Co., Inc.,
       DDC Limited Partnership, and MCU Financial Corporation.

**RESPONSE:**    Admitted except it is denied as to MCU since there were no bookkeeping
                 functions for MCU at that time.  Trial testimony of the Pierces.

61.    From at least June of 2000 to the present, Gary Pierce has been the bookkeeper for Seth
       Co., Inc., DDC Limited Partnership, and MCU Financial Corporation.

**RESPONSE:**    Denied.  MCU was not doing business during that time.  Trial testimony of the
                 Pierces.

62.    Between May 15, 2000, and August 18, 2000, Gary Pierce wrote checks totaling
       $571,699.55 from DDC Limited Partnership's Charles Schwab account.  After Gary
       Pierce prepared these checks, they were signed by Derek Pierce.

**RESPONSE:**    Denied.  The records do not reflect that that amount was transferred.  See
                 records.

63.     From May of 2000 to October of 2000, Gary Pierce maintained the check register with
        respect to DDC Limited Partnership's Charles Schwab account.

**RESPONSE:**   Admitted.

64.     By check dated March 17, 1998, made out to the Town of Manchester, in the amount of
        $44,429.00, DDC Limited Partnership posted the bond for erosion control for Seth Co.,
        Inc. with respect to Birch Mountain Phase VI.

**RESPONSE:**   Admitted.

65.     By check dated July 31, 1998, DDC Limited Partnership paid the Town of Windsor
        $5,259.80.

**RESPONSE:**   Admitted.

66.     DDC Limited Partnership's "Income Statement Year End 12/31/98" lists as expenses
        $5,260 in property taxes for 9 Deanne Lynn Circle, Windsor, and $4,957 in property taxes
        for 2643 Day Hill Road, Windsor.  No other taxes are listed as an expense.

**RESPONSE:**   Admitted.

67.     DDC Limited Partnership's "Income Statement Year End 12/31/98" was transmitted by
        Michael Wagner of Derekseth Homes via facsimile to the accountant at Kostin, Ruffkess
        & Company, LLC who prepared DDC Limited Partnership's 1998 income tax return.

**RESPONSE:**   Admitted.

68.     The 1998 Form 8825, Rental Real Estate Income and Expenses of a Partnership, attached
        to DDC Limited Partnership's income tax return lists $10,294 in taxes as a rental real
        estate expense with respect to the property located at 2643 Day Hill Road.  The property
        located at 9 Deanne Lynn Circle is not listed on DDC Limited Partnership's 1998 Form
        8825.

**RESPONSE:**   Admitted.

69.     Gary Pierce provided information and instructions to Kostin, Ruffkess & Company, LLC
        relative to preparation of DDC Limited Partnership's 1998 income tax return.

**RESPONSE:**   Admitted.

70.   By letter dated June 13, 2001, the Internal Revenue Service sent DDC Limited
      Partnership a notice regarding $793.60 in unpaid taxes.  Gary Pierce transmitted the
      Internal Revenue Service notice to Larry Marziale of Kostin, Ruffkess & Company via
      facsimile.  Gary Pierce requested that Mr. Marziale review the Internal Revenue Service
      notice to DDC Limited Partnership and give him a call.

**RESPONSE:**   Admitted.

71.   Dennis Riendeau Quality Painting's $300.00 service invoice with respect to repainting
      the exterior of Gary Pierce's residence in 1998 was billed to "Derekseth, 1643 Prospect
      Hill Rd, Windsor."

**RESPONSE:**   Admitted.

72.   By check dated November 30, 1998, DDC Limited Partnership paid Dennis Riendeau
      Quality Painting $300.00 for repainting the exterior of Gary Pierce's residence.

**RESPONSE:**   Admitted.

73.   In 1998 Lawlor Landscaping sent its October 16, 1998 invoice with respect to lawn
      renovation at Gary Pierce's residence to "DerekSeth."

**RESPONSE:**   Admitted.

74.   In 1998 Gary Pierce instructed employee's in Seth Co., Inc.'s bookkeeping department to
      have DDC Limited Partnership pay Lawlor Landscaping $583.00 for the lawn renovation
      at his residence.

**RESPONSE:**   Admitted.

75.   By check dated December 17, 1998, DDC Limited Partnership paid Lawlor Landscaping
      $583.00 for the lawn renovation at Gary and Mary Pierce's residence.

**RESPONSE:**   Admitted.

76.   Kostin, Ruffkess & Company sent its November 5, 1999, invoice with respect to
      preparation of the 1998 federal and state corporate returns for MCU Financial
      Corporation to Derekseth Corporation.

**RESPONSE:**   Admitted.

- 16 -

77.    At Gary Pierce's direction, DDC Limited Partnership paid for the preparation of MCU Financial Corporation's 1998 federal and corporate tax returns by check dated June 7, 2000.

**RESPONSE:**    Admitted.

78.    On November 9, 2000, in connection with Kostin, Ruffkess & Company's preparation of DDC Limited Partnership's 1999 income tax return, Gary Pierce transmitted data from DDC Limited Partnership's check book to Larry Marziale of Kostin, Ruffkess & Company. The facsimile cover sheet contained the following message from Gary Pierce: "Larry, here is the DDC 1999 data from the check book. That is all there seems to be. If I find any other information I will call."

**RESPONSE:**    Admitted.

79.    Gary Pierce provided Larry Marziale of Kostin, Ruffkess & Company with information about DDC Limited Partnership in connection with Kostin, Ruffkess & Company's preparation of DDC Limited Partnership's 2000 income tax return.

**RESPONSE:**    Admitted.

80.    Mary Pierce does not know who had signature authority on DDC Limited Partnership's Charles Schwab account.

**RESPONSE:**    Denied in that Mary Pierce "does not recall" as distinguished from "does not know." To the extent that her deposition may have indicated, "do not know," it was never clarified as to whether or not it is based on a present recollection or whether or not she was aware of the facts and circumstances at the time of the occurrence, and just does not now know. Trial testimony of the Pierces.

81.    By cover letter dated October 9, 1999, Howard A. Jubrey, Jr. of Appraisal Associates, Inc. sent an appraisal report of the real property located at 9 Deanne Lynn Circle, Windsor, and 2643 Day Hill Road, Windsor, to "Gary Pierce, DDC Limited Partnership, 9 Deanne Lynn Circle, Windsor, CT 06095."

**RESPONSE:**    Admitted.

- 17 -

82.    Gary Pierce was involved in negotiating the 2000 sale of real property located at 2643 Day Hill Road, Windsor, Connecticut by DDC Limited Partnership to James and Renee Trzcinski. None of DDC Limited Partnership's three partners were involved in negotiating the sale of this property to the Trzcinskis.

**RESPONSE:**    The first sentence is admitted. The second sentence is confusing. There were two general partners of DDC and a limited partner of DDC, but otherwise admitted.

83.    Wall McCormack Robinson, P.C.'s September 8, 2000 billing statement with respect to work related to the 2000 sale of property located at 2643 Day Hill Road, Windsor, Connecticut by DDC Limited Partnership was sent to Gary Pierce at 5 Amanda Drive, Manchester, Connecticut.

**RESPONSE:**    Admitted.

84.    The Settlement Statement with respect to the sale of real property located at 2643 Day Hill Road, Windsor, Connecticut in 2000 by DDC Limited Partnership to James and Renee Trzcinski lists "DDC Limited Partnership/Gary L. Pierce" as the seller.

**RESPONSE:**    Admitted.

85.    The Settlement Statement with respect to the sale of real property located at 2643 Day Hill Road, Windsor, Connecticut in 2000 by DDC Limited Partnership to James and Renee Trzcinski is signed by Gary Pierce as the seller.

**RESPONSE:**    Admitted.

86.    From 1986 through the present, Gary Pierce's personal residence has been located at 9 Deanne Lynn Circle, Windsor, Connecticut.

**RESPONSE:**    Admitted.

87.    On January 24, 1995, Gary Pierce transferred title to the real property located at 9 Deanne Lynn Circle, Windsor, Connecticut to his wife Mary Catherine Pierce for no consideration.

**RESPONSE:**    Admitted.

88.    Derek Pierce does not know who or what entity pays for the expenses of the property
       located at 9 Deanne Lynn Circle, Windsor, Connecticut.

**RESPONSE:**    Denied in that Derek Pierce "does not recall" as distinguished from "does not
                 know." To the extent that his deposition may have indicated, "do not know," it was
                 never clarified as to whether or not it is based on a present recollection or whether
                 or not he was aware of the facts and circumstances at the time of the occurrence,
                 and just does not now know. Trial testimony of the Pierces.

89.    On occasion, DDC Limited Partnership purchased trade homes from Seth Co., Inc.'s
       customers.

**RESPONSE:**    Denied because "on occasion" is an ambiguous phrase and no specific date or dates
                 were provided.

90.    Gary Pierce was involved in DDC Limited Partnership's purchase of trade homes from
       Seth Co., Inc.'s customers.

**RESPONSE:**    Admitted.

91.    DDC Limited Partnership is listed as the creditor holding the largest unsecured claim
       against Seth Co., Inc. on the List of Creditors Holding 20 Largest Unsecured Claims
       attached to the United States Bankruptcy Court Petition for Seth Co., Inc. The amount of
       the claim is listed as $1,385,641.00.

**RESPONSE:**    Admitted.

**B2.**    **Proposed findings of fact, with a specification of each witness, document, pleading, and/or tangible physical evidence on which such finding could be premised. Such proposed findings, with the claims of fact (1 above), shall constitute the proof on which the claims of relief are premised.**

The United States' Trial Memorandum Section B2 in <u>Seth Co., Inc. v. United States</u> includes proposed findings of fact which are relevant to the issue of whether DDC Limited Partnership is a nominee, alter ego or transferee of Gary Pierce. Those proposed findings of fact are incorporated herein by reference. The following list of proposed findings of fact serves to supplement those proposed findings of fact.

1.    The source of funds in the checking account maintained by Mary Pierce from 1984 through 1990 was Gary and Mary Pierce's paychecks. Testimony of Mary Pierce.

**RESPONSE:**    It is only partially correct in that additional funds were contributed to the checking account.

2.    Gary Pierce asked Judith Patnaude to sign the Record of Incorporation and Organization of MCU Financial Corporation. Testimony of Judith Patnaude.

**RESPONSE:**    Admitted.

3.    Judith Patnaude was never told what MCU Financial Corporation would do. Testimony of Judith Patnaude.

**RESPONSE:**    Admitted.

4.    MCU Financial Corporation's Minute of Meeting of Incorporators states that a meeting of the incorporates was held on October 16, 1993 at 9:00 a.m. at 1643 Prospect Hill Road, Windsor, Connecticut and summarizes what occurred during the meeting. No such meeting of the incorporators was ever held. Testimony of Judith Patnaude.

**RESPONSE:**    Denied. Trial testimony of the Pierces.

- 20 -

*B2. Proposed facts.*

5.       Gary Pierce controlled MCU Financial Corporation.  Testimony of Gary Pierce, Derek
         Pierce, Mary Pierce and Judith Patnaude; Letter dated February 24, 2001, addressed to
         MCU Financial Corporation, Gary Pierce, from State of Connecticut, Department of
         Revenue Services.

**RESPONSE:**   Denied. Calls for a conclusion.  Trial testimony of the Pierces.

6.       Gary Pierce controlled DDC Limited Partnership.  Testimony of Gary Pierce, Derek
         Pierce, Mary Pierce, C. David Weeks, James Morey and Steven Miller; Letter dated
         November 17, 1992, from Andros, Floyd & Miller, P.C. to Gary Pierce; Billing
         Statements of Andros, Floyd & Miller, P.C.; Adjusting Journal Entries DDC Limited
         Partnership 12/31/98; Facsimile from Gary Pierce to Larry Marziale dated 6/22/01;
         Dennis Riendeau Quality Painting Service Invoice; Lawlor Landscaping Invoice; Kostin,
         Ruffkess & Company Invoice dated November 5, 1999; check register for DDC Limited
         Partnership's Charles Schwab account; Cover letter dated October 9, 1999, from Howard
         A. Jubrey, Jr. of Appraisal Associates, Inc. to Gary Pierce; Wall McCormack Robinson,
         P.C.'s September 8, 2000 Billing Statement; Purchase agreement with respect to sale of
         real property located at 2643 Day Hill Road, Windsor, Connecticut in 2000; Settlement
         Statement with respect to the sale of real property located at 2643 Day Hill Road,
         Windsor, Connecticut in 2000.

**RESPONSE:**   Denied. Calls for a conclusion.  Trial testimony of the Pierces.

7.       Between 1992 and 1998, Gary Pierce transferred over one million six hundred thousand
         dollars to MCU Financial Corporation and DDC Limited Partnership.  Testimony of Gary
         Pierce, Derek Pierce, Mary Pierce, John Wall and Frank Louis; Tax returns for MCU
         Financial Corporation, DDC Limited Partnership, Gary and Mary Pierce; Letter from
         John A. Wall of Wall, McCormack Robinson, P.C. to Mary and Gary Pierce dated
         October 20, 1993, regarding estate planning; Letter from Frank Louis of Andros, Floyd &
         Miller, P.C. to Appeals Officer Vincent D'Avirro, Internal Revenue Service Appeals
         Office, dated March 10, 2000.

**RESPONSE:**   Denied.  The evidence will not support the conclusion alleged.  Trial testimony of
                the Pierces.

*B2. Proposed facts.*

8. Gary Pierce transferred real property located at 9 Deanne Lynn Circle, Windsor, Connecticut, and 2643 Day Hill Road, Windsor, Connecticut, to DDC Limited Partnership, via his wife, for no consideration. Testimony of Gary Pierce and Mary Pierce; Deeds with respect to 9 Deanne Lynn Circle and 2643 Day Hill Road.

**RESPONSE:** Admitted, but no value in combined properties at that time.

9. On January 24, 1995, the real property located at 9 Deanne Lynn Circle, Windsor, Connecticut, had a fair market value of $264,180. Testimony of Howard Smith.

**RESPONSE:** Denied. Not aware of what Mr. Smith may testify to and there has been no disclosure of expert to have any such testimony.

10. On January 24, 1995, Gary Pierce had $77,907 of equity in the real property located at 9 Deanne Lynn Circle, Windsor, Connecticut. Testimony of Howard Smith; Mortgage statement with respect to 9 Deanne Lynn Circle.

**RESPONSE:** Denied. Not aware of what Mr. Smith may testify to and there has been no disclosure of expert to have any such testimony.

11. On November 12, 1997, the real property located at 2643 Day Hill Road, Windsor, Connecticut, had a fair market value of $341,000. Testimony of Howard Smith.

**RESPONSE:** Denied. Not aware of what Mr. Smith may testify to and there has been no disclosure of expert to have any such testimony.

12. On November 12, 1997, Gary Pierce had $144,444 of equity in the real property located at 2643 Day Hill Road, Windsor, Connecticut. Testimony of Howard Smith; Mortgage statement with respect to 2643 Day Hill Road.

**RESPONSE:** Denied. Not aware of what Mr. Smith may testify to and there has been no disclosure of expert to have any such testimony.

*B2. Proposed facts.*

13.     Gary Pierce retained control of the assets (including the cash assets) transferred to MCU
        Financial Corporation and DDC Limited Partnership. Testimony of Gary Pierce, Mary
        Pierce, Derek Pierce, C. David Weeks, Douglas Pike, John Wall and James Morey; Gary
        Pierce's income tax returns; Adjusting Journal Entries DDC Limited Partnership
        12/31/98; Facsimile from Gary Pierce to Larry Marziale dated 6/22/01; Dennis Riendeau
        Quality Painting Service Invoice; Lawlor Landscaping Invoice; Kostin, Ruffkess &
        Company Invoice dated November 5, 1999; check register for DDC Limited Partnership's
        Charles Schwab account; Cover letter dated October 9, 1999, from Howard A. Jubrey, Jr.
        of Appraisal Associates, Inc. to Gary Pierce; Wall McCormack Robinson, P.C.'s
        September 8, 2000 Billing Statement; Purchase agreement with respect to sale of real
        property located at 2643 Day Hill Road, Windsor, Connecticut in 2000; Settlement
        Statement with respect to the sale of real property located at 2643 Day Hill Road,
        Windsor, Connecticut in 2000; Letter dated February 24, 2001, addressed to MCU
        Financial Corporation, Gary Pierce, from State of Connecticut, Department of Revenue
        Services; Facsimile from Gary Pierce to Larry Marziale dated 11/09/00.

**RESPONSE:**     Denied. The conclusion is not supported by the documents referenced therein.
                  Trial testimony of the Pierces and Larry Marziale.

14.     Gary Pierce transferred his money through DDC Limited Partnership directly to Seth Co.,
        Inc. and to Seth Co., Inc. through CDW, Inc. Gary Pierce transferred his money through
        MCU Financial Corporation directly to Seth Co., Inc. and to Seth Co., Inc. through DDC
        Limited Partnership. Money transferred to Seth Co., Inc. was in turn transferred to Mary
        Catherine Development and Deanne Lynn Realty at Gary Pierce's direction. Money
        transferred to Deanne Lynne Realty was in turn transferred to Gary Pierce at Gary
        Pierce's direction. Seth Co., Inc. and MCU Financial Corporation transferred money to
        DDC Limited Partnership at Gary Pierce's direction. DDC Limited Partnership
        transferred money to Mary Pierce at Gary Pierce's direction. Testimony of Gary Pierce,
        Derek Pierce, Mary Pierce, C. David Weeks, Kim Cavanaugh, Robert Riley, James
        Morey and Howard Smith; Income tax returns of MCU Financial Corporation, DDC
        Limited Partnership, CDW, Inc., Seth Co., Inc., Mary Catherine Development, Deanne
        Lynn Realty, Gary Pierce and Mary.

**RESPONSE:**     Denied. The conclusion is not supported by the documents referenced therein.
                  Trial testimony of the Pierces and Larry Marziale.

*B2. Proposed facts.*

15. The transfers of funds described in paragraph 14 were made without the transferor's receipt of a reasonably equivalent value in exchange for the transfers. Testimony of Gary Pierce, Derek Pierce, Mary Pierce, C. David Weeks, Kim Cavanaugh, Robert Riley, James Morey and Howard Smith; Income tax returns of MCU Financial Corporation, DDC Limited Partnership, CDW, Inc., Seth Co., Inc., Mary Catherine Development, Deanne Lynn Realty, Gary Pierce and Mary.

**RESPONSE:**    Denied. The conclusion is not supported by the documents referenced therein. Trial testimony of the Pierces and Larry Marziale.

16. The transfers of funds described in paragraph 14 were made with the actual intent to hinder, delay or defraud Gary Pierce's creditors and the transferees participated in this fraudulent intent. Testimony of Gary Pierce, C. David Weeks, Frank Louis, John Wall, Steven Miller, Richard Weinstein, James Morey, and Howard Smith; Simscroft-Echo Farms, Inc. Original Note; Summons and Complaint, Simscroft-Echo Farms, Inc. v. Mary Catherine Development Company and Gary L. Pierce, Docket No. CV-97-0572171-S in the Superior Court of the State of Connecticut, Judicial District of Hartford-New Britain at Hartford; Amendment to Memorandum of Decision, filed September 10, 1998, and Memorandum of Decision, filed August 3, 1998, with respect to Simscroft-Echo Farms, Inc. v. Mary Catherine Development Company and Gary L. Pierce, Docket No. CV-97-0572171-S in the Superior Court of the State of Connecticut, Judicial District of Hartford-New Britain at Hartford, whereby judgment entered for the plaintiff against the defendants in the amount of $480,618.93 principal balance, plus interest, late charges and attorneys fees; Settlement Agreement and Release between Simscroft-Echo Farms, Inc. and Mary Catherine Development and Gary Pierce, $80,000, dated February 26, 1999, with respect to Simscroft-Echo Farms, Inc. v. Mary Catherine Development Company and Gary L. Pierce, Docket No. CV-97-0572171-S in the Superior Court of the State of Connecticut, Judicial District of Hartford-New Britain at Hartford; Affidavit of Debt with respect to Federal Deposit Insurance Corporation as Receiver for Suffield Bank v. Mary Catherine Development, et al. dated September 12, 1997; transcripts of Internal Revenue Service accounts with respect to Gary Pierce's income tax liabilities.

**RESPONSE:**    Denied. The conclusion is not supported by the documents referenced therein. Trial testimony of the Pierces and Larry Marziale.

*B2. Proposed facts.*

17.   From 1992 through 1999, the sum of Gary Pierce's debts was greater than the sum of his
      assets. Testimony of Gary Pierce, James Morey, Howard Smith, Robert Riley, Steven
      Miller, Frank Louis, John Wall and Richard Weinstein; Letter from Gary Pierce to Kathy
      Eldred dated March 12, 1992, regarding application for tentative refund; Memo from
      Gary Pierce to Howard Smith dated August 18, 1999; Affidavit of Gary Pierce dated
      September 4, 2002; Gary Pierce's Personal Financial Statement signed February 10,
      1994; Gary Pierce's Personal Financial Statement signed December 12, 1994; Gary
      Pierce's Personal Financial Statement signed June 24, 1997; Gary Pierce's Personal
      Financial Statement signed December 16, 1998; Gary Pierce's 1994 through 1999 income
      tax returns; Collection Information Statement for Individuals dated May 27, 1999;
      Simscroft-Echo Farms, Inc. Original Note; Summons and Complaint, Simscroft-Echo
      Farms, Inc. v. Mary Catherine Development Company and Gary L. Pierce, Docket No.
      CV-97-0572171-S in the Superior Court of the State of Connecticut, Judicial District of
      Hartford-New Britain at Hartford; Amendment to Memorandum of Decision, filed
      September 10, 1998, and Memorandum of Decision, filed August 3, 1998, with respect to
      Simscroft-Echo Farms, Inc. v. Mary Catherine Development Company and Gary L.
      Pierce, Docket No. CV-97-0572171-S in the Superior Court of the State of Connecticut,
      Judicial District of Hartford-New Britain at Hartford, whereby judgment entered for the
      plaintiff against the defendants in the amount of $480,618.93 principal balance, plus
      interest, late charges and attorneys fees; Settlement Agreement and Release between
      Simscroft-Echo Farms, Inc. and Mary Catherine Development and Gary Pierce, $80,000,
      dated February 26, 1999, with respect to Simscroft-Echo Farms, Inc. v. Mary Catherine
      Development Company and Gary L. Pierce, Docket No. CV-97-0572171-S in the
      Superior Court of the State of Connecticut, Judicial District of Hartford-New Britain at
      Hartford; Affidavit of Debt with respect to Federal Deposit Insurance Corporation as
      Receiver for Suffield Bank v. Mary Catherine Development, et al. dated September 12,
      1997; Notice of Deficiency to Gary Pierce with respect to 1991 income tax liability, dated
      January 10, 1994; Notice of Deficiency to Gary and Mary Pierce with respect to 1984,
      1986-1989 income tax liabilities, dated January 10, 1994; transcripts of Internal Revenue
      Service accounts with respect to Gary Pierce's income tax liabilities.

**RESPONSE:**   Denied. The conclusion is not supported by the documents referenced therein.
      Although the documentation may ultimately yield such an interpretation, the
      plaintiff cannot consent to the same especially in that Mr. Pierce's financial
      situation changed and varied significantly between 1992 and 1999. Trial testimony
      of the Pierces and Larry Marziale.

*B2. Proposed facts.*

18.     From 1992 through 1999, Gary Pierce was not paying significant personal debts when they were due. Testimony of Gary Pierce, James Morey, Howard Smith, Robert Riley and Richard Weinstein; Simscroft-Echo Farms, Inc. Original Note; Summons and Complaint, Simscroft-Echo Farms, Inc. v. Mary Catherine Development Company and Gary L. Pierce, Docket No. CV-97-0572171-S in the Superior Court of the State of Connecticut, Judicial District of Hartford-New Britain at Hartford; Amendment to Memorandum of Decision, filed September 10, 1998, and Memorandum of Decision, filed August 3, 1998, with respect to Simscroft-Echo Farms, Inc. v. Mary Catherine Development Company and Gary L. Pierce, Docket No. CV-97-0572171-S in the Superior Court of the State of Connecticut, Judicial District of Hartford-New Britain at Hartford, whereby judgment entered for the plaintiff against the defendants in the amount of $480,618.93 principal balance, plus interest, late charges and attorneys fees; Settlement Agreement and Release between Simscroft-Echo Farms, Inc. and Mary Catherine Development and Gary Pierce, $80,000, dated February 26, 1999, with respect to Simscroft-Echo Farms, Inc. v. Mary Catherine Development Company and Gary L. Pierce, Docket No. CV-97-0572171-S in the Superior Court of the State of Connecticut, Judicial District of Hartford-New Britain at Hartford; Affidavit of Debt with respect to Federal Deposit Insurance Corporation as Receiver for Suffield Bank v. Mary Catherine Development, et al. dated September 12, 1997; transcripts of Internal Revenue Service accounts with respect to Gary Pierce's income tax liabilities.

**RESPONSE:**     Denied. Argumentative and vague. The conclusion is not supported by the documents referenced therein. Trial testimony of the Pierces and Larry Marziale.

19.     Gary Pierce transferred assets (including cash assets) to MCU Financial Corporation and DDC Limited Partnership with the actual intent to hinder, delay or defraud his creditors and the transferees participated in this fraudulent intent. Testimony of Gary Pierce, C. David Weeks, Frank Louis, John Wall, Steven Miller, Richard Weinstein, James Morey, and Howard Smith; Simscroft-Echo Farms, Inc. Original Note; Summons and Complaint, Simscroft-Echo Farms, Inc. v. Mary Catherine Development Company and Gary L. Pierce, Docket No. CV-97-0572171-S in the Superior Court of the State of Connecticut, Judicial District of Hartford-New Britain at Hartford; Amendment to Memorandum of Decision, filed September 10, 1998, and Memorandum of Decision, filed August 3, 1998, with respect to Simscroft-Echo Farms, Inc. v. Mary Catherine Development Company and Gary L. Pierce, Docket No. CV-97-0572171-S in the Superior Court of the State of Connecticut, Judicial District of Hartford-New Britain at Hartford, whereby judgment entered for the plaintiff against the defendants in the amount of $480,618.93 principal balance, plus interest, late charges and attorneys fees; Settlement Agreement and Release

- 26 -

*B2. Proposed facts.*

between Simscroft-Echo Farms, Inc. and Mary Catherine Development and Gary Pierce, $80,000, dated February 26, 1999, with respect to Simscroft-Echo Farms, Inc. v. Mary Catherine Development Company and Gary L. Pierce, Docket No. CV-97-0572171-S in the Superior Court of the State of Connecticut, Judicial District of Hartford-New Britain at Hartford; Affidavit of Debt with respect to Federal Deposit Insurance Corporation as Receiver for Suffield Bank v. Mary Catherine Development, et al. dated September 12, 1997; transcripts of Internal Revenue Service accounts with respect to Gary Pierce's income tax liabilities.

**RESPONSE:**   Denied.  The conclusion is not supported by the documents referenced therein. Trial testimony of the Pierces and Larry Marziale.

20.   Gary Pierce transferred assets (including cash assets) to MCU Financial Corporation and DDC Limited Partnership without receiving a reasonably equivalent value in exchange for the transfers.  Testimony of Gary Pierce, Derek Pierce, C. David Weeks, Income tax returns of MCU Financial Corporation, DDC Limited Partnership, Gary Pierce and Mary Pierce.

**RESPONSE:**   Denied.  The conclusion is not supported by the documents referenced therein. Trial testimony of the Pierces and Larry Marziale.

- 27 -

*B2.  Proposed facts.*

**B3.  Claims of law, with the authority on which each claim is premised and organized as they relate to each theory on which relief is sought.**

1.       Gary Pierce's transfers of assets to DDC Limited Partnership were fraudulent as to the United States because the United States' claim against Gary Pierce for income tax liabilities arose before the transfers, Gary Pierce did not receive a reasonably equivalent value in exchange for the transfers and Gary Pierce was insolvent at the time of the transfers.  See CONN. GEN. STAT. ANN. §§ 52-552f(a).

**RESPONSE:**   Denied as to the factual assertions, but the legal proposition is correct although any such claim is barred by the applicable statute of limitations, Conn. Gen. Stat. § 52-552j.

2.       Gary Pierce's transfers of assets to DDC Limited Partnership were fraudulent as to the United States because the United States' claim arose before the transfers and the transfers were made with the actual intent to hinder, delay or defraud a creditor of Gary Pierce.  See CONN. GEN. STAT. ANN. §§ 52-552e(a).

**RESPONSE:**   Denied as to the factual assertions, but the legal proposition is correct although any such claim is barred by the applicable statute of limitations, Conn. Gen. Stat. § 52-552j.

3.       DDC Limited Partnership's assets are subject to collection of Gary Pierce's income tax liabilities because Gary Pierce dominated and controlled DDC Limited Partnership and liability is to be imposed to reach an equitable result.  See LiButti v. United States, 107 F.3d 110, 119 (2d Cir. 1997).

**RESPONSE:**   Denied as to the factual assertions, but the legal proposition is correct.

*B3. Claims of law.*

4.    DDC Limited Partnership's assets are subject to collection of Gary Pierce's income tax liabilities because DDC Limited Partnership is an alter ego or nominee of Gary Pierce. See G.M. Leasing Corp. v. United States, 429 U.S. 338 (1977); LiButti, 107 F.3d 110; Shades Ridge Holding Company, Inc. v. United States 888 F.2d 725 (11th Cir. 1989); Nantucket Village Dev. Co., v. United States, 87 A.F.T.R.2d 2001-743 (N.D. Ohio 2001).

**RESPONSE:**    Denied as to the factual assertions, but the legal proposition is correct.

5.    DDC Limited Partnership is an alter ego of Gary Pierce under federal law because (1) with respect to Gary Pierce's transfer of assets to DDC Limited Partnership, his transfer of assets between DDC Limited Partnership and entities owned by his family members, his use of DDC Limited Partnership to channel money to himself, his wife and companies owned by him, his use of DDC Limited Partnership to pay personal expenses for himself and his wife, his use of DDC Limited Partnership to pay the expenses of entities owned by family members, and his use of DDC Limited Partnership to purchase trade properties of Seth Co., Inc.'s customers, DDC Limited Partnership was a mere instrumentality of Gary Pierce; (2) Gary Pierce's control over DDC Limited Partnership was used to avoid personal liabilities and liabilities of entities owned by him and (3) such control was the proximate cause of the Internal Revenue Service's inability to collect the income tax liabilities of Gary Pierce for 1984, 1986 through 1989 and 1991. See *e.g.* Avco Delta Corp. Canada Ltd. v. United States, 540 F.2d 258 (7th Cir. 1976); LiButti, 107 F.3d 110; WM. Passalacqua Builders, Inc. v. Resnick Developers, Inc., 933 F.2d 131, 139 (2d Cir. 1991).

**RESPONSE:**    Denied as to the factual assertions, but the legal proposition is correct.

6.    Applying Connecticut law, DDC Limited Partnership is Gary Pierce's alter ego because (1) with respect to Gary Pierce's transfer of assets to DDC Limited Partnership, his transfer of assets between DDC Limited Partnership and entities owned by his family members, his use of DDC Limited Partnership to channel money to himself, his wife and companies owned by him, his use of DDC Limited Partnership to pay personal expenses for himself and his wife, his use of DDC Limited Partnership to pay the expenses of entities owned by family members, and his use of DDC Limited Partnership to purchase trade properties of Seth Co., Inc.'s customers, he exercised complete domination of DDC Limited Partnership in disregard of its existence as a separate entity; (2) that control over DDC Limited Partnership was used to avoid personal liabilities and liabilities of entities owned by him and (3) such control was the proximate

- 29 -

*B3.  Claims of law.*

cause of the Internal Revenue Service's inability to collect the income tax liabilities of Gary Pierce for 1984, 1986 through 1989 and 1991.  See <u>Campisano v. Nardi</u>, 212 Conn. 282 (1989); <u>Tomasso v. Armor</u>, 187 Conn. 544 (1982); <u>Saphir v. Neustadt</u>, 177 Conn. 191 (1979); <u>Zaist v. Olson</u>, 154 Conn. 563 (1967); <u>Litchfield Asset Mgmt. Corp. v. Howell</u>, 70 Conn.App. 133 (2002).

**RESPONSE:**   Denied as to the factual assertions, but the legal proposition is correct.

**B4.  A list of proposed exhibits, including deposition transcripts, with a listing of those pages of each transcript to be offered and on which the proposed findings of fact, if any, are premised.**

The United States' Trial Memorandum Section B in <u>Seth Co., Inc. v. United States</u> includes proposed exhibits which are relevant to the issue of whether DDC Limited Partnership is a nominee, alter ego or transferee of Gary Pierce.  Those proposed exhibits are incorporated herein by reference.  The following list of proposed exhibits serves to supplement those proposed exhibits.

1.   2001 Form 1065 DDC Limited Partnership

2.   Checks drawn on and deposited into DDC Limited Partnership's Fleet Bank Account, Account Number 936-135-2926

3.   Checks drawn on DDC Limited Partnership's Charles Schwab Account, Account Number 2745-8942

4.   Check register for DDC Limited Partnership's Charles Schwab Account, Account Number 2745-8942

5.   Letter addressed to MCU Financial Corporation, Gary Pierce, 5 Amanda Dr., Manchester, dated February 24, 2001, from State of Connecticut, Department of Revenue Services, stating "we have received information indicating that the above corporation is no longer doing business. . ."

*B4. Exhibits.*

6. Checks drawn on and deposited into CDW, Inc.'s Savings Bank of Manchester Account, Account 65033607

7. 1989 Form 1045 Gary and Mary Pierce

8. 1990 Form 1045 Gary and Mary Pierce

9. 1991 Form 1045 Gary and Mary Pierce

10. Simscroft-Echo Farms, Inc. Original Note

11. Right of First Refusal dated July 30, 1996 between SKW Real Estate Limited Partnership and MCU Financial Corporation

12. Checks drawn on and deposited into MCU Financial Corporation's Fleet Bank Account, Account Number 24 541 960 3

13. DDC Limited Partnership's "Income Statement Year End 12/31/98"

14. Facsimile from Mike Wagner to John Sendley of Kostin, Ruffkess & Company dated 10/8/98

15. Adjusting Journal Entries DDC Limited Partnership 12/31/98

16. Facsimile from Gary Pierce to Larry Marziale dated 6/22/01

17. Dennis Riendeau Quality Painting Service Invoice

18. Lawlor Landscaping Invoice

19. Kostin, Ruffkess & Company Invoice dated November 5, 1999, with respect to the preparation of the 1998 federal and state corporate returns for MCU Financial Corporation

20. Facsimile from Gary Pierce to Larry Marziale dated 11/09/00

21. Memo from Michael Roy to Larry Marziale regarding interest accrual to DDC Limited Partnership for the year 2001

   Case 3:02-cv-01049-PCD     Document 18     Filed 10/31/2003     Page 32 of 39

*B4. Exhibits.*

22.   Cover letter dated October 9, 1999, from Howard A. Jubrey, Jr. of Appraisal Associates, Inc. to Gary Pierce

23.   Wall McCormack Robinson, P.C.'s September 8, 2000 Billing Statement

24.   Settlement Statement with respect to the sale of real property located at 2643 Day Hill Road, Windsor, Connecticut in 2000

25.   Mortgage statement with respect to 9 Deanne Lynn Circle, Windsor, Connecticut

26.   Mortgage statement with respect to 2643 Day Hill Road, Windsor, Connecticut

27.   Letter dated November 17, 1992, from Andros, Floyd & Miller, P.C. to Gary Pierce

**RESPONSE:**   The plaintiff has no objection to Exhibits 1 through 27.


       The undersigned counsel for the United States recently located a witness, Judith Patnaude, in Reston, Virginia.  Unless the information she has provided is stipulated to, the United States will need to take her deposition for trial.

B5. *Witnesses.*

**B5. A list of all witnesses expected to be called, with a brief summary of the testimony of each. As to each expert witness: a statement of the area of expertise, attaching a curriculum vitae, if available; and the opinion to be expressed with a brief summary of the basis for the opinion.**

1.    Gary Pierce
      9 Deanne Lynn Circle
      Windsor, CT 06095

      Gary Pierce will testify with respect to his work history, earnings, savings, assets, debts, MCU Financial Corporation and DDC Limited Partnership's purpose, the formation of MCU Financial Corporation and DDC Limited Partnership, his role with respect to MCU Financial Corporation and DDC Limited Partnership, the transfer of assets to and by MCU Financial Corporation and DDC Limited Partnership, and the subsequent transfer of money by entities receiving money from MCU Financial Corporation and DDC Limited Partnership. He will also testify with respect to his wife's innocent spouse claim.

2.    Derek Pierce
      5 Amanda Drive
      Manchester, CT

      Derek Pierce will testify with respect to his work history, his knowledge regarding MCU Financial Corporation and DDC Limited Partnership, his role in MCU Financial Corporation and DDC Limited Partnership, the transfers made to and by MCU Financial Corporation and DDC Limited Partnership.

B5. *Witnesses.*

3.     <u>Mary Catherine Pierce</u>
       9 Deanne Lynn Circle
       Windsor, CT 06095

       Mary Pierce will testify with respect to her work history, earnings, savings, assets, and
       debts, and her knowledge regarding MCU Financial Corporation and DDC Limited
       Partnership, her role in MCU Financial Corporation and DDC Limited Partnership, the
       transfers made to and by MCU Financial Corporation and DDC Limited Partnership. She
       will also testify with respect to her innocent spouse claim.

4.     <u>C. David Weeks</u>
       1258 William Street
       Longmeadow, MA  01106

       C. David Weeks will testify with respect to his knowledge regarding DDC Limited
       Partnership and the transfer of money between MCU Financial Corporation, DDC
       Limited Partnership and CDW, Inc.

5.     <u>Douglas Pike</u>

       Douglas Pike will testify with respect to his knowledge regarding MCU Financial
       Corporation and DDC Limited Partnership and Gary Pierce's personal creditors and
       creditors of entities owned by Gary Pierce.

6.     <u>Michael Wagner</u>

       Michael Wagner will testify with respect to his knowledge regarding MCU Financial
       Corporation and DDC Limited Partnership and Gary Pierce's personal creditors and
       creditors of entities owned by Gary Pierce.

B5. *Witnesses.*

7.  James Morey
    Revenue Officer
    Internal Revenue Service
    936 Silas Deane Highway, Third Floor
    Wethersfield, CT 06109

    James Morey will testify with respect to relevant knowledge which he gained while he
    was assigned the delinquent accounts of Gary Pierce for collection of Mr. Pierce's 1984,
    1986-1989 and 1991 income tax liabilities.  His testimony will include information
    concerning Gary Pierce's assets, representations made by Gary Pierce, and documents
    turned over to him by Gary Pierce and Gary Pierce's representatives.  Testimony will also
    include tax return information with respect to MCU Financial Corporation, DDC Limited
    Partnership, CDW, Inc., Gary Pierce, Mary Pierce and Derek Pierce, Seth Co., Inc., Mary
    Catherine Development, Derekseth Corporation, and Deanne Lynn Realty Company, as
    necessary.

8.  Howard Smith
    Appeals Officer
    Internal Revenue Service
    105 Court Street, Room 300
    New Haven, CT 06511

    Howard Smith will testify with respect to relevant knowledge gained while working on an
    Offer In Compromise submitted by Gary Pierce with respect to his 1984, 1986-1989 and
    1991 income tax liabilities.  His testimony will include information concerning the value
    of assets transferred by Gary Pierce.  Testimony will also include tax return information
    with respect to MCU Financial Corporation, DDC Limited Partnership, CDW, Inc., Gary
    Pierce, Mary Pierce and Derek Pierce, Seth Co., Inc., Mary Catherine Development,
    Derekseth Corporation, and Deanne Lynn Realty Company, as necessary.

B5. *Witnesses.*

9.     Lawrence Marziale
       Kostin, Ruffkess & Company
       345 North Main Street
       West Hartford, Connecticut

       Lawrence Marziale will testify with respect to Kostin, Ruffkess & Company's preparation
       of DDC Limited Partnership's income tax returns and relevant knowledge gained during
       Kostin, Ruffkess & Company's preparation of DDC Limited Partnership's income tax
       returns.

10.    John Wall
       Wall, McCormack & Robinson, P.C.
       860 Prospect Hill Road
       Windsor, CT 06095

       John Wall's testimony will cover information regarding Gary Pierce's assets, Mary
       Pierce's assets, estate planning for Gary and Mary Pierce and transfer of the real property
       located at 2643 Day Hill Road, Windsor, in 2000.

11.    Frank Louis
       Associate Area Counsel SB/SE
       Internal Revenue Service
       333 East River Drive, Suite 200
       East Hartford, CT 06108

       Frank Louis' will provide testimony concerning his representation of Gary and Mary
       Pierce with respect to their tax liabilities and representations made by Mary Pierce with
       respect to her savings.

12.    Stephen Miller
       Andros, Floyd & Miller, P.C.
       864 Wethersfield Ave
       Hartford, CT 06114

       Stephen Miller's testimony will include information regarding his firm's representation of
       Gary and Mary Pierce with respect to their income tax liabilities and Andros, Floyd &
       Miller, P.C.'s billing statements.

B5. *Witnesses.*

13.  Richard Weinstein
     29 South Main Street, Suite 207
     West Hartford, CT 06107

     Richard Weinstein will testify with respect to prior representation of Gary Pierce or
     entities owned by Gary Pierce to the extent that it is relevant.

14.  Judith Patnaude
     11275 Center Harbor Road
     Reston, VA 20194

     Judith Patnaude will testify with respect to her role in MCU Financial Corporation.

15.  The United States reserves the right to call any witness listed by DDC Limited
     Partnership.

16.  The United States reserves the right to call rebuttal witnesses.

**RESPONSE:**   The plaintiff objects to the witnesses James Morey and Howard Smith, to the extent
that their testimony is based upon anything other than admissions from the Pierces,
as said testimony would constitute hearsay.  Further, the plaintiff objects to the
extent that any such testimony includes expert testimony, such as that earlier
suggested, from Howard Smith without any previous disclosure of expert.  The
scope and detail of any such testimony to be offered from this individual is not
known except to the extent that it is summarily referenced in the list of witnesses.

Further, there was no previous reference to Judith Patnaude.  She has not been
deposed and unless the parties can agree upon the scope of any evidence to be
offered from her, the plaintiff would oppose to a late date deposition from this
witness.

**B6.  A description of each item of proposed evidence, whether testimonial or exhibit form, reciting evidence likely to be disputed or to require a ruling by the court, setting forth the basis and authority on which admissibility is premised.**

At the present time, the United States is not aware of any disputes in regard to the admissibility of evidence.


Respectfully Submitted,

PLAINTIFF,
DDC LIMITED PARTNERSHIP


By_____
Kerry M. Wisser, Esquire of
WEINSTEIN & WISSER, P.C.
29 South Main Street, Suite 207
West Hartford, CT  06107
Telephone No. (860) 561-2628
Facsimile No. (860) 521-6150
Federal Bar No. ct01205

- 38 -

## CERTIFICATION

This is to certify that on the 30th day of October, 2003, a copy of the foregoing Defendant's Section B and Plaintiff's Responses Thereto was served upon:

Karen Wozniak, Esquire
Trial Attorney, Tax Division
U.S. Department of Justice
Civil Trial Section, Northern Region
P.O. Box 55, Ben Franklin Station
Washington, DC  20044-0055

_____
Kerry M. Wisser

WCLIENTS\DDC LP\TRIAL MEMO – SECTION B\PAB

- 39 -